UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** CV 10-04091 SJO (JCGx)         **DATE:** July 20, 2011

**TITLE:** Wendesen Dula, et al. v. Calop Business Systems, Inc.

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                              Not Present
Courtroom Clerk                               Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**           **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                                   Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND** [Docket No. 72]; **GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** [Docket No. 67]; **DISMISSING DEFENDANT'S COUNTERCLAIMS** [Docket No. 45]; **DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS MOOT** [Docket No. 74]; **DENYING PLAINTIFF'S MOTION TO COMPEL ARBITRATION AS MOOT** [Docket No. 73]

These matters are before the Court on Defendant Calop Business Systems, Inc. d/b/a Calop Aeroground Services' ("Defendant") and Plaintiff Service Employees International Union Local 1877's ("Plaintiff" or "SEIU") Motions for Summary Judgment, filed on April 22, 2011, and April 29, 2011, respectively.[1] (Docket Nos. 67, 74.) Plaintiff also filed a Motion for Leave to Amend Complaint and a Motion to Compel Arbitration on April 29, 2011. (Docket Nos. 72, 73.) Defendant and Plaintiff filed their respective Oppositions and Replies. The Court found these matters suitable for disposition without oral argument and vacated the hearings set for May 23, 2011, and May 30, 2011. *See* Fed. R. Civ. P. 78(b). For the following reasons, Plaintiff's Motion for Leave to Amend is DENIED. Plaintiff's Motion to Compel Arbitration is DENIED AS MOOT. Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART, and Plaintiff's Motion for Summary Judgment is DENIED AS MOOT. Defendant's counterclaims are DISMISSED without prejudice.

I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a labor organization representing employees for the purpose of collective bargaining. (First Am. Compl. ("FAC") ¶ 9.) Plaintiff's headquarters is located in Los Angeles, California. (*Id.*)

---

[1] The instant action initially included Plaintiff Wendesen Dula ("Dula"), a former employee of Defendant. On December 21, 2010, Plaintiff filed a Stipulation to Dismiss Plaintiff Wendesen Dula from the action. Both parties agreed to dismiss all of Dula's claims against Defendant and dismissed Dula as a party. (*See* Stipulation for Voluntary Dismissal of Pl. Wendesen Dula.) Thus, the only remaining plaintiff is SEIU.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 10-04091 SJO (JCGx)            **DATE:** July 20, 2011

Plaintiff does not dispute that it is not certified as a union by the National Mediation Board ("NMB"). (Decl. of Juan Hong ("Hong Decl.") in Supp. of Def.'s Mot. Exs. 5, 6.) Defendant is a California corporation that provides security and passenger services as a subcontractor for airlines operating out of the Los Angeles International Airport (LAX). (FAC ¶ 10.)

On May 28, 2009, Defendant and Plaintiff entered into a Cardcheck Election Agreement. (Pl.'s Statement of Uncontroverted Facts ("Uncontroverted Facts") ¶ 1.) As a result, in December 2009, Defendant voluntarily recognized Plaintiff as the bargaining representative of Defendant's employees. (*Id.*) From December 2009 through February 2010, both parties negotiated a collective bargaining agreement ("CBA") to establish wage and healthcare benefits. (*Id.* ¶ 2.) The negotiations for the CBA were never completed. (Hong Decl. Ex. 6.) Instead, both parties reached a decision on a wage and benefit agreement. (Uncontroverted Facts ¶ 3.) Defendant believed that the agreement would bankrupt the company, but agreed to it nonetheless. (*Id.* ¶¶ 3-4.) Defendant then took steps to reduce costs by imposing split shifts and laying off employees unwilling to comply. (*Id.* ¶¶ 4-5, 10.) Defendant's employees were generally upset by the prospect of split shifts. (*Id.* ¶ 8.) Plaintiff asked Defendant to delay the implementation of the split-shift schedule and to negotiate scheduling. (*Id.* ¶ 11.)

On February 23, 2010, Defendant and Plaintiff held a meeting to negotiate the split-shift scheduling. (*See* Uncontroverted Facts ¶¶ 14-18.) One of Defendant's anti-union employees provided printed handouts blaming the threatened layoffs and increased split shifts on Plaintiff. (*Id.* ¶ 16.) At the meeting, Dula voiced his opinion strongly in favor of Plaintiff. (*Id.* ¶ 17.) Defendant then began collecting petition signatures to no longer recognize Plaintiff as the bargaining representative of Defendant's employees. (*Id.* ¶ 23.) After receiving petitions from a majority of its employees, Defendant withdrew recognition from Plaintiff and stopped providing wage and healthcare benefits. (Decl. of Young Chong in Supp. of Def.'s Mot. ¶ 6.)

On April 13, 2010, Plaintiff then publicized the dispute in an electronic publication circulated at LAX. (Uncontroverted Facts ¶¶ 29-32, 36.) The publication showcased a picture of Dula and his dissenting statements about the dispute. (*Id.*) Subsequently, on April 29, 2010, Defendant terminated Dula when Dula refused to abandon his post. (FAC ¶ 37; Uncontroverted Facts ¶¶ 29-43.)

Plaintiff contends that Dula was terminated because of his union-related activities, not because of performance. (FAC ¶ 40.) Plaintiff further contends that Defendant threatened to terminate employees if they supported the CBA. (*Id.* ¶¶ 20-21.) Plaintiff alleges that Defendant fraudulently acquired petitions by claiming that the petitions were against split shifts or layoffs. (*Id.* ¶ 24.) Thus, Plaintiff argues that Defendant's alleged anti-union campaign caused irreparable harm by chilling employees from exercising their union rights.

Defendant, on the other hand, alleges that on April 1, 2010, Plaintiff spread defamatory statements by circulating flyers that accuse Defendant of making threats of termination to employees who sided with Plaintiff. (Answer ¶ 13.) Defendant avers that, on April 5, 2010, Plaintiff distributed defamatory flyers calling Defendant a "deadbeat contractor" and stating that Defendant's

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** CV 10-04091 SJO (JCGx) | **DATE:** July 20, 2011 |

managers are responsible for over $300,000 of debt and bankruptcy of their sister company Atlas Air Group. (*Id.* ¶ 18.) Plaintiff distributed such flyers to over forty airline managers. (Hong Decl. Ex. 8.) Defendant further alleges that, on April 23, 2010, Plaintiff publicly urged airlines to reconsider their relationship with Defendant because Defendant's principals had committed egregious security violations when operating Atlas Air Group. (Answer ¶ 20.)

Plaintiff filed its First Amended Complaint ("FAC") against Defendant on August 11, 2010. Plaintiff alleges seven causes of action: (1) violation of section 2, Seventh of the Railway Labor Act ("RLA"); (2) violation of section 2, First of the RLA; (3) violation of section 2, Third of the RLA; (4) violation of section 2, Fourth of the RLA; (5) unlawful termination of Dula; (6) alternative claim seeking arbitration of grievances under section 204 of the RLA; and (7) alternative claim seeking arbitration of contract disputes pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4 (2006). (*See* FAC.)

Defendant responded with its First Amended Counterclaim against Plaintiff on October 6, 2010. Defendant alleges three state law causes of action: (1) defamation; (2) intentional interference with contractual relations; and (3) intentional interference with prospective economic relations. (*See* First Am. Countercl.)

II.   DISCUSSION

   A.   Plaintiff's Motion for Leave to Amend

In Plaintiff's FAC, Plaintiff alleges seven causes of action against Defendant. Plaintiff, however, now concedes that "it does not have any effective judicial remedy for [three of its] RLA claims" and wishes to amend its FAC. (Pl.'s Opp'n 3:15-16.) Additionally, Plaintiff admits that Dula "decided no longer to participate in the case," and thus, his unlawful termination claim cannot be prosecuted. (*Id.* at 3:17-19.) As such, Plaintiff seeks to drop Claims One, Two, Five, and Six. (Pl.'s Mot. for Leave to Amend ("Mot. for Leave") 6:24-7:6.)

"Under the Federal Rules of Civil Procedure, a leave to amend shall be freely given when justice so requires." *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983). Nevertheless, undue delay, prejudice to the opposing party, and the existence of a pending summary judgment motion weigh heavily against allowing leave to amend. *Schlacter-Jones v. Gen. Tel.*, 936 F.2d 435, 443 (9th Cir. 1991), *abrogated on other grounds by Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683 (9th Cir. 2001).

In *M/V American Queen*, the Ninth Circuit considered a number of factors in denying leave to amend. 708 F.2d at 1492. In that case, the plaintiff delayed in filing the motion for a year and a half after initiating the case. *Id.* The plaintiff neither alleged newly discovered facts nor made new allegations. *Id.* Moreover, a motion for summary judgment was pending and the possible disposition of the case would have been unduly delayed if the motion for leave to amend were granted. *Id.* The Ninth Circuit found that "these factors [had] form[ed] the basis of a proper exercise of discretion by the trial court in refusing to allow amendment." *Id.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: CV 10-04091 SJO (JCGx)          DATE: July 20, 2011

The case at hand presents an identical situation to the one in *M/V American Queen*, 708 F.2d at 1492. Plaintiff knew its claims needed to be amended as early as December 21, 2010, when the parties stipulated to dismiss Dula as a plaintiff. Yet, Plaintiff waited four months before filing its Motion for Leave to Amend. Moreover, Plaintiff neither alleges newly discovered facts nor makes new allegations; instead, it wants to remove four of its seven claims. (*See* Mot. for Leave; Def.'s Opp'n.) Furthermore, Plaintiff's Motion for Leave to Amend comes after Defendant filed its Motion for Summary Judgment. Plaintiff even filed its own Motion for Summary Judgment. With two motions for summary judgment pending, the possible disposition of the case would be unduly delayed if the Court were to grant Plaintiff's Motion for Leave to Amend. Because Plaintiff no longer wishes to pursue some of its claims, the Court can easily deem them moot or voluntarily dismissed, rather than unnecessarily prolong litigation by allowing Plaintiff to amend its FAC. Thus, the Court finds that the factors outlined in *M/V American Queen* weigh against Plaintiff and form a proper basis to deny Plaintiff's Motion for Leave to Amend.

Accordingly, the Court DENIES Plaintiff's Motion for Leave to Amend Complaint.

      B.      <u>Legal Standard for Motion for Summary Judgment</u>

Federal Rule of Civil Procedure ("Rule") 56(a) mandates that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party does not need to produce any evidence or prove the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 325. Rather, the moving party's initial burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* Once the moving party meets its initial burden, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("[O]pponent must do more than simply show that there is some metaphysical doubt as to the material facts."). Further, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment [and] [f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. At the summary judgment stage, a court does not make credibility

determinations or weigh conflicting evidence. *See id.* at 249. A court is required to draw all inferences in a light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

1. Defendant's Motion for Summary Judgment

    a. Legal Standard for Mootness

For a case to fall within a court's limited jurisdiction, "Article III [of the Constitution] requires that a live controversy persist throughout all stages of the litigation." *Gator.com Corp. v. L.L. Bean*, 398 F.3d 1125, 1128-29 (9th Cir. 2005) (citing *Steffel v. Tompson*, 415 U.S. 452, 459 n.10 (1974)). In order to present a live, justiciable controversy, "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 556 (9th Cir. 2010) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). "Where this condition is not met, the case has become moot, and its resolution is no longer within [a court's] constitutional purview." *Gator.com*, 398 F.3d at 1129. A federal court has no authority to issue opinions upon moot questions. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992). Because mootness is a jurisdictional issue, courts are obliged to raise it *sua sponte*. *Gator.com*, 398 F.3d at 1129.

    b. Plaintiff's Claims One, Two, Five and Six

Plaintiff no longer wishes to pursue Claims One, Two, Five and Six. (Pl.'s Opp'n 7:15-8:24.) Plaintiff states that a substantial number of Defendant's employees no longer publicly support it, which precludes the possibility of meaningful judicial relief for the aforementioned claims. (*Id.* at 8:10-20.) Plaintiff admits that there is no longer a "live, justiciable controversy" and wants "to eliminate its now-moot claims." (*Id.* at 8:19-20.)

Accordingly, Plaintiff's Claims One, Two, Five and Six are DISMISSED AS MOOT.

    c. Plaintiff's Standing as to Claims Three and Four

Plaintiff's Claims Three and Four attempt to prove that Defendant violated 45 U.S.C. § 152, Third and Fourth, respectively. Defendant contends that an uncertified union does not have standing to sue because the rights enumerated in these sections apply to employees, not uncertified unions. (Def.'s Mot. 15:22-23.) Plaintiff does not dispute its uncertified union status. (*See generally* Pl.'s Opp'n.) Thus, the issue is whether an uncertified union has a private right of action under the RLA. Because there is no genuine issue of material fact, the issue is a question of law.

Section 2, Third and Fourth of the RLA: (1) establish the right of employees covered by the RLA to organize and bargain collectively through representatives of their own choosing; and (2) prohibit a carrier from interfering or coercing employees in the exercise of those rights or the selection of a representative. 45 U.S.C. § 152, Third, Fourth (2006). Section 2, Third and Fourth of the RLA

**CASE NO.:** CV 10-04091 SJO (JCGx)     **DATE:** July 20, 2011

do not include the term "uncertified union" within its text. *See generally id.* As such, several Courts of Appeals have interpreted the statute to bar uncertified unions from having standing to bring suit. *Adams v. Fed. Express Corp.*, 547 F.2d 319, 322 (6th Cir. 1976), *cert. denied*, 431 U.S. 915 (1977) ("We find no express provision in the [RLA] conferring a right of action to an uncertified Union to file suit on behalf of employees it seeks to represent."); *Bensel v. Allied Pilots Assoc.*, 378 F.3d 298, 318 (3d Cir. 2004) (recognizing that uncertified unions cannot maintain a suit under the RLA).

A sister district court in the Ninth Circuit has decided this very same issue. In *International Board of Teamsters v. American West Airlines, Inc. (IBT)*, No. CIV-95-2924, 1996 WL 578504, at *7 (D. Ariz. Sept. 4, 1996), the district court for the District of Arizona held that an uncertified union does not have standing to sue under section 2, Third and Fourth of the RLA. In *IBT*, the defendant airline corporation had terminated approximately 500 employees. *Id.* at *1. The plaintiff union attempted to organize those employees but failed to obtain NMB certification. *Id.* The uncertified union and five former employees then brought suit, alleging that the defendant terminated pro-union employees for the purpose of chilling union organization pursuant to section 2, Third and Fourth of the RLA. *Id.* The *IBT* court determined that the "Supreme Court's discussion of the [RLA] . . . does not support the existence of an implied right of action under the RLA for uncertified unions on their own behalf." *Id.* at *7 (citing *Int'l Assoc. of Machinists v. Street*, 367 U.S. 740, 759 (1961)). The court further held that "[t]he fact that the [RLA] confers rights upon employees – not uncertified unions – indicates that such an implied private right of action for uncertified unions does not exist." *Id.*

In the present case, the situation is identical. Plaintiff, an uncertified union, brought an action against Defendant for termination of a pro-union employee. (*See* FAC ¶¶ 66-69.) Plaintiff alleges that Defendant engaged in actions to chill union organization, and it attempts to invoke section 2, Third and Fourth of the RLA. (*See id.* ¶¶ 49-65.) Also, Plaintiff is suing on its own behalf. The case at hand poses the same question under nearly the same circumstances as in *IBT*. Therefore, the court's analysis and application of the RLA in *IBT* are persuasive. The RLA does not give standing to uncertified unions for a private right of action. *IBT*, 1996 WL 578504, at *7 (citing *Street*, 367 U.S. at 759). Consequently, Plaintiff does not have standing for Claims Three and Four.

Despite the aforementioned case law, Plaintiff contends that uncertified unions may bring a cause of action under the RLA. (Pl.'s Opp'n 9:10-12:7.) As support, Plaintiff proffers a line of cases to buttress its argument. Plaintiff asserts that the Supreme Court in *Texas & New Orleans Railroads v. Brotherhood of Railway & Steamship Clerks*, 281 U.S. 548 (1930),"squarely held that the [45 U.S.C. § 152,] Third is enforceable by an uncertified union's private action." (Pl.'s Opp'n 9:25-10:2.) Plaintiff then states that the Ninth Circuit in *Burke v. Compania Mexicana De Aviacion, S.A.*, 433 F.2d 1031, 1033 (9th Cir. 1970), "held that an employee who is not a union member can bring suit under [section] 2, Third or Fourth" of the RLA. (Pl.'s Opp'n 10:7-8.) Plaintiff claims that the "Ninth Circuit further extended the scope . . . in *Fennessy v. Southwest Airlines*, 91 F.3d 1359 (9th Cir. 1996), holding that an employee with union representation may bring an action under [section] 2, Third and Fourth" of the RLA. (Pl.'s Opp'n 10:13-16.)

CASE NO.:  CV 10-04091 SJO (JCGx)          DATE:  July 20, 2011

Plaintiff's cases are unavailing and inapposite. They do not stand for the proposition that an uncertified union has standing to bring an action under section 2, Third and Fourth of the RLA. The Supreme Court in *Clerks* never stated that an uncertified union has standing. *See generally Clerks*, 281 U.S. 548. Not only are the words "uncertified union" completely absent from the entire opinion, but *Clerks* also related to a different issue – whether the RLA created judicially enforceable rights and obligations. *See id.* at 432-33. Moreover, in both *Burke* and *Fennessy*, the Ninth Circuit's opinion identified that *employees*, not uncertified unions, have standing. *See Burke*, 433 F.2d at 1034; *Fennessy*, 91 F.3d at 1365. Here, there are no *employees* that are asserting any claims. Plaintiff stipulated to dismissing Dula – a former employee of Defendant and the one plaintiff with standing under the RLA. (Stipulation for Voluntary Dismissal of Pl. Wendesen Dula 1:9.) Thus, Plaintiff does not have standing as a matter of law.

Accordingly, Defendant's Motion for Summary Judgment as to Claims Three and Four are GRANTED.

### d.    Plaintiff's Claim Seven and Motion to Compel Arbitration

Plaintiff's Claim Seven and Motion to Compel Arbitration invoke section 4 of the FAA ("section 4") to compel arbitration. (FAC ¶¶ 77-81; Mot. to Compel 3:11-7:22.) Defendant counters that arbitration pursuant to section 4 is proper only when the federal court has jurisdiction over an underlying dispute in the suit. (Def.'s Mot. 19:11-21.) Thus, because Plaintiff does not have an underlying federal claim, Defendant asserts that the Court does not have jurisdiction to compel arbitration. (*Id.* at 19:19-22.)

"While the Federal Arbitration Act creates federal substantive law requiring the parties to honor arbitration agreements, it does not create any independent federal-question jurisdiction . . . ." *Southland Corp. v. Keating*, 465 U.S. 1, 15 n.9 (1984). Because, "the FAA provides no independent basis for federal jurisdiction, . . . the power to enforce an arbitration clause only exists when federal jurisdiction is otherwise established." *Countrywide Home Loans Inc. v. Mortg. Guar. Ins. Corp.*, ___F.3d___, 2011 WL 2373055, *2 (9th Cir. June 15, 2011) (internal quotation marks omitted). Here, Plaintiff solely relies on federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's claims arising under the RLA. (*See* FAC ¶ 80.) As established above, Plaintiff does not have standing to bring a cause of action under the RLA. *See supra* Parts II.B.1. Thus, Plaintiff's only claim is under the FAA, and the FAA standing alone does not satisfy federal question jurisdiction. As such, the Court does not have proper subject matter jurisdiction over Plaintiff's Claim Seven.

In sum, Plaintiff no longer wishes to pursue Claims One, Two, Five and Six because there is no longer a live, justiciable controversy as to those claims. (Pl.'s Opp'n 7:15-8:24.) Plaintiff, an uncertified union, does not have standing to bring a cause of action under the RLA; thus, Claims Three and Four are precluded as a matter of law. And because Plaintiff no longer has any federal claims that would form the basis for federal question jurisdiction, the Court does not have

proper subject matter jurisdiction over Plaintiff's Claim Seven. For this same reason, Plaintiff's Motion to Compel must be denied.

Accordingly, Defendant's Motion for Summary Judgment is GRANTED as to Claims Three, Four and Seven. Plaintiff's Claims One, Two, Five and Six are DISMISSED AS MOOT. Plaintiff's Motion to Compel is DENIED AS MOOT.

    2.    <u>Plaintiff's Motion for Summary Judgment as to Defendant's Counterclaims</u>

        a.    <u>Lack of Subject Matter Jurisdiction</u>

Defendant asserts three state law claims against Plaintiff: (1) defamation; (2) intentional interference with contractual relations; and (3) intentional interference with prospective economic relations. (*See* First Am. Countercl.) Jurisdiction of Defendant's counterclaims is based on Rule 13(a), compulsory counterclaims. (*Id.* ¶ 1.)

If a counterclaim is compulsory, then federal courts have supplemental jurisdiction under 28 U.S.C. § 1367 to hear the matter. *Baker v. Gold Seal Liquors*, 417 U.S. 467, 469 n.1 (1974). Pursuant to 28 U.S.C. § 1367, the district court must have original jurisdiction of one claim in order to invoke supplemental jurisdiction of other claims. *See* 28 U.S.C. § 1367 (2006). A district court loses supplemental jurisdiction if it "dismisse[s] all claims over which it ha[d] original jurisdiction." *Id.* A district court may decide not to dismiss supplemental state claims by considering factors such as judicial economy, convenience, fairness, and comity. *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1309 (9th Cir. 1992). "[I]n the usual case in which federal law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Reynolds v. Cnty. of San Diego*, 84 F.3d 1162, 1171 (9th Cir. 1996) *overruled on other grounds by Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). Some Courts of Appeals have gone even further and have held that, absent extraordinary or unusual circumstances, federal courts should not retain jurisdiction. *See, e.g., Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996) ("When all federal claims are eliminated before trial, the balance of factors will point to declining jurisdiction.") (internal quotation marks omitted); *Wentzka v. Gellman*, 991 F.2d 423, 425 (7th Cir. 1993) ("Where a federal claim drops out before trial, a district court should not retain the state claims absent extraordinary circumstances.").

Here, Defendant's state law causes of action hinge on Plaintiff's federal claims under the RLA. As aforementioned, Plaintiff does not have standing to invoke the RLA. *See supra* Parts II.B.1. None of Defendant's counterclaims involve a federal question under 28 U.S.C. § 1331. Furthermore, diversity jurisdiction does not exist under 28 U.S.C. § 1332 because both parties are citizens of California. (*See generally* FAC; First Am. Countercl.) Thus, the Court does not have original jurisdiction over Defendant's counterclaims.

The balance of comity, fairness, and convenience weigh in favor of declining jurisdiction. With respect to comity, the entire case now turns on the application of state law. In such

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 10-04091 SJO (JCGx)        **DATE:** July 20, 2011

circumstances, refraining from interpretation of state law weighs heavily in favor of declining jurisdiction. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (stating that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law"). While initiating a new suit in state court may inconvenience Defendant, Defendant has made no showing of extraordinary or usual circumstances. Where federal claims are no longer present, courts have regularly declined to extend supplemental jurisdiction at the summary judgment stage. *See, e.g., Chavez v. City of Los Angeles*, No. CV-04-2690, 2005 WL 5887182, at *6 (C.D. Cal. Aug. 2, 2005) (declining to exercise supplemental jurisdiction and remanding the state claims in a summary judgment order); *Doran v. 7 Eleven*, No. SACV-04-1125, 2008 WL 6259323, at *5 (C.D. Cal. Dec. 22, 2008) (dismissing state law claims at the summary judgment stage). Thus, the balance of factors and precedent show that jurisdiction should be declined. As such, the Court declines to exercise supplemental jurisdiction under 27 U.S.C. § 1367(c).

Accordingly, Defendant's counterclaims are DISMISSED without prejudice and Defendant is granted leave to re-file in state court. Plaintiff's Motion for Summary Judgment is DENIED AS MOOT.

III.    RULING

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Leave to Amend Complaint. The Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment. The Court declines to assert supplemental jurisdiction over Defendant's counterclaims, and as such, the counterclaims are **DISMISSED** without prejudice. Plaintiff's Motion for Summary Judgment is **DENIED AS MOOT**. Lastly, the Court **DENIES AS MOOT** Plaintiff's Motion to Compel Arbitration.

IT IS SO ORDERED.